UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | |
|---|---|
| KEVIN LEE PERRY, INDIVIDUALLY, AND AS ADMINISTRATOR OF THE ESTATE OF MADONNA G. PERRY, DECEASED N.P., MINOR, BY HIS FATHER AND NEXT FRIEND, KEVIN PERRY; AND ANDREA SMITH BUTLER<br><br>PLAINTIFFS<br><br>v.<br><br>OWENSBORO HEALTH, INC. F/K/A OWENSBORO MEDICAL HEALTH SYSTEM, INC.<br><br>DEFENDANT | ACTION NO. 4:14-CV-00046-JHM |

**MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS ON BEHALF OF DEFENDANT, OWENSBORO HEALTH, INC.**

Defendant, Owensboro Health, Inc., f/k/a Owensboro Medical Health System, Inc. ("OHI"), by counsel, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(c) and 12(h)(2)(B), and LR 7.1, in support of its concurrently-filed *Motion for Judgment on the Pleadings on Behalf of Defendant, Owensboro Health, Inc.* states as follows.

**A. PLAINTIFFS' ALLEGATIONS AS SET FORTH IN THE COMPLAINT**

1. On April 2, 2014, Plaintiffs filed their Third Amended Complaint ("Complaint") in the state court action from which this matter is removed. *See* Complaint; Doc. 1-3, PageID #9.

1

2. Plaintiffs' Complaint alleges that:

> On November 6, 2009, Madonna was treated through the emergency room at Owensboro Health in Daviess County, Kentucky, on two separate occasions. On both occasions, she received medical treatment and care, which **fell below the acceptable standard of care**.

Complaint, Doc 1-3, PageID #10, ¶ 8.

3. Plaintiffs' Complaint asserts also that:

> Madonna [Perry] was **negligently discharged home from both emergency room admissions** at Owensboro Health on November 6, 2009, despite her rapidly deteriorating condition.

*Id.* at PageID #11, ¶ 12.

4. In further support of their negligence claim against OHI, Plaintiffs contend:

> At all times relevant herein, nurses and professional medical care providers, whose names are not known to Plaintiffs at this time, in treating Madonna [Perry] had the duty to exercise the degree of care and skill expected of reasonably competent similar medical care providers under similar circumstances.
>
> At the dates and times as described in paragraphs 8 -15 above, **various nurses and medical care providers are believed to have negligently breached their duty** as described above in paragraph number 17 above.

*Id.* at PageID #12, ¶¶ 17, 18.

5. Plaintiffs also claim that the same negligent behavior violated both the screening and stabilization requirements under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. The Complaint states: "[Madonna Perry's] discharge violated the Emergency Medical Treatment and Active Labor Act." *Id.* at PageID 11, ¶13.

sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky 40202
(502) 582-1600

6. However, a closer examination of the Complaint demonstrates that Plaintiffs' EMTALA claim is no more than a reiteration of their negligence claim:

> Owensboro Health owed a non-delegable duty under EMTALA and **in providing what would be the minimum standard of care** to Madonna [Perry], by delivering base care and treatment **in accordance with the prevailing professional standards of care for a health care provider** or similar providers in light of all relevant and surrounding circumstances. EMTALA and its regulations require Owensboro Health, by and through its agents, apparent agents, servants, and/or employees while acting within the course and scope of their employment to comply with the requirements set forth in said law.

*Id.* at PageID # 12-13, ¶24 (emphasis added).

7. Plaintiffs' specific allegations related to the EMTALA screening requirement are:

> …Owensboro Health by and through its…employees failed to comply by their acts and omissions, including one or more of the following, which are violations of EMTALA:...B. Failure to perform an appropriate medical screening of Madonna;… [and] F. Failing to provide sufficient examination, testing and/or diagnostic evaluation which would have demonstrated Madonna's emergency medical condition.

*Id.* at PageID # 13, ¶¶ 25(B), 25(F).

8. With regard to the stabilization requirement, the Complaint states:

> …Owensboro Health by and through its…employees failed to comply by their acts and omissions, including one or more of the following, which are violations of EMTALA:...C. Failure to provide appropriate medical treatment required by Madonna [Perry]; D. Failure to provide an appropriate transfer of Madonna; [and] E. Discharging Madonna while she manifested a medical condition of sufficient severity such that Owensboro Health' refusal of immediate medical attention and continued treatment was reasonably expected, by any skilled healthcare provider, to result in severe jeopardy and death[.]

sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky  40202
(502) 582-1600

*Id.* at PageID # 13, ¶¶ 25(C), 25(D), 25(E).

### B. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1395dd(a)

9. Under the EMTALA the medical screening requirement:

> In the case of a hospital that has a hospital emergency department, if any individual comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.

42 U.S.C. § 1395dd(a).

10. According to the United States Court of Appeals for the Sixth Circuit:
> [W]e interpret the vague phrase "appropriate medical screening" to mean a screening that the hospital would have offered to any paying patient, and the vague phrase "emergency medical condition" to mean a condition within the actual knowledge of the doctors on duty or those doctors that would have been provided to any paying patient.

*Cleland v. Bronson Health Care Group*, 917 F.2d 266, 268-269 (6th Cir. 1990).

11. In *Cleland*, the Sixth Circuit rejected the Plaintiffs' argument that the term "appropriate medical screening" "denote[d]…the full panoply of state malpractice law" and upheld the U.S. District Court for the Western District of Michigan in dismissing an EMTALA and medical malpractice Complaint for failure to state a claim. *Id.* at 271. In so ruling, the Cleland Court held that:

> In one sense, in hindsight, the screening provided in this case could scarcely be called appropriate. The patient came


sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky 40202
(502) 582-1600

>   in, he had a condition that was at least conceivably ascertainable by medical science, the condition was not ascertained, and he died within 24 hours. At the same time, there is not the slightest indication that this outcome would have been any different for a patient of any other characteristics. Had his sex, race, national origin, financial condition, politics, social status, etc., been anything whatsoever, as far as can be gleaned from the complaint, the outcome would have been the same. Under these circumstances, we hold that **the complaint simply fails to allege any inappropriateness in the medical screening in the sense required by the Act**.
>
> *Id.*
>
> 12. Thus, under *Cleland* and its progeny:
>
>   > [W]hether a hospital administered an "appropriate" screening refers not only to the hospital's standards, but **also to the motives with which a hospital acts**. [*Cleland v. Bronson Health Care Group*, 917 F.2d] at 272. If a hospital acts in the same manner as it would have for the usual patient, then the screening provided is appropriate and "**a plaintiff fails to establish a claim for violation of the screening requirement where there is no evidence of disparate treatment based on an improper motive**." *Garrett v. Detroit Med. Ctr.*, No. 06-10753, 2007 U.S. Dist. LEXIS 17584, 2007 WL 789023, at *3 (E.D. Mich. March 14, 2007); *see also Stringfellow v. Oakwood Hosp. and Med. Ctr.*, 409 F.Supp.2d 866, 870-71 (E.D. Mich. 2005) (granting motion to dismiss plaintiff's screening claim for failure to allege substandard treatment or an improper motive).

*Estate of Lacko v. Mercy Hosp.*, 829 F. Supp. 2d 543, 549 (E.D. Mich. 2011).

13. In *Estate of Lacko*, the U.S. District Court for the Eastern District of Michigan found a Complaint insufficient, requiring dismissal, where it plead disparate treatment, but failed to allege an improper motive. *Id.* at 551.

sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky  40202
(502) 582-1600

14. Here, Plaintiffs' Complaint fails to allege **either** any disparity in treatment **or** that the disparity was "based on improper motive." Therefore, as in *Cleland* and *Estate of Lacko*, Plaintiffs' Complaint facially fails to state a claim under 42 U.S.C. § 1395dd(a).

   **C. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER 42 U.S.C. § 1395dd(b)**

15. Under the so-called stabilization requirement:

   > If any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

   42 U.S.C. § 1395dd(b)(1). Therefore, before a hospital can be liable for failure to stabilize a patient, two (2) requirements must be satisfied. First, the hospital must "determine that the individual has an emergency medical condition." Second, the hospital must have failed to stabilize the patient before transferring or discharging the patient.

16. In the Sixth Circuit, "…in order to trigger further EMTALA obligations, the hospital physicians **must actually recognize** that the patient has an emergency medical condition; if they do not believe an emergency medical condition exists because they wrongly diagnose the patient, EMTALA does not apply. *Moses v. Providence Hosp. & Med. Ctrs., Inc.*, 561 F.3d 573, 585 (6th Cir. 2009), *citing Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 786 (6th Cir. 2003).

17. Following *Moses*, the U.S. District Court for the Middle District of Tennessee


sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky 40202
(502) 582-1600

noted: "Only actual knowledge of an emergency medical condition [by Defendant]—not simply the existence of facts that should have put Defendant on notice—triggers a duty to stabilize a patient pursuant to § 1395dd(b) of EMTALA." *Burd v. Lebanon HMA, Inc.*, 756 F.Supp.2d 896, 906 (M.D. Tenn. 2010).

18. *Burd* held also that:

> EMTALA is not a substitute for state malpractice claims. A claim under § 1395dd(b) must demonstrate that a defendant has actual knowledge that an emergency medical condition exists, and the Court is not made aware of an exception for instances in which a defendant hospital's shoddy evaluation should have produced actual knowledge of an emergency medical condition, but did not."

*Burd v. Leb. HMA, Inc.*, 756 F. Supp. 2d 896, 910 (M.D. Tenn. 2010).

18. Relying on *Moses* and *Burd*, The *Estate of Lacko* Court based its dismissal of the Plaintiff's EMTALA and medical malpractice Complaint in part, on the fact that negligence claims and claims requiring actual knowledge, such as EMTALA stabilization claims, are fundamentally incompatible. *Estate of Lacko* noted:

> Any hospital employee or agent that has knowledge of a patient's emergency medical condition might potentially subject the hospital to liability under EMTALA. Moses, 561 F.3d at 585. However, to the extent Plaintiff argues that Defendant was negligent in failing to recognize that Lacko had an emergency medical condition, such an allegation does not fall under EMTALA and is reserved for state malpractice law. Id.

*Estate of Lacko v. Mercy Hosp.*, 829 F. Supp. 2d 543, 553, ( E.D. Mich. 2011).

19. In claiming inappropriate screening, the Complaint alleges that OHI: "Fail[ed] to provide sufficient examination, testing and/or diagnostic evaluation **which would have**


sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky  40202
(502) 582-1600

**demonstrated** Madonna's emergency medical condition." *Complaint,* supra, at PageID # 13, ¶ 25(F). The claim that, had OHI provided better screening its agents and employees **would have known** of Ms. Perry's emergency medical condition is antagonistic to the requirement under EMTALA that the hospital have actual knowledge of the emergency medical condition. On its face, the Complaint concedes that actual knowledge was lacking.

20.     In accordance with *Moses*, *Roberts*, *Burd*, and *Lacko*, Plaintiffs' claim that OHI's agents or employees negligently discharged Ms. Perry is inconsistent with to its claim that the same OHI agents or employees violated EMTALA by the same actions.

### D. PLAINTIFFS MEDICAL MALPRACTICE CLAIM SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

21.     Because Plaintiff's Federal claim under EMTALA fails to state a claim upon which relief can be granted, it should be dismissed, as set forth above. Because the only remaining claim in the Complaint will be a medical negligence claim under state law, the Court should exercise its discretion under 28 U.S.C. § 1367(c)(2) and 28 U.S.C. § 1367(c)(3) to decline supplemental jurisdiction over the medical malpractice claim after dismissal of the Federal claim.  Under § 1367(c)(2), dismissal is appropriate because the Complaint fundamentally sounds in state law negligence. Under 28 U.S.C. § 1367(c)(3), dismissal is appropriate in the event the Court dismisses the EMTALA claim, the only Federal question.

### E. PLAINTIFFS SHOULD NOT BE ALLOWED TO AMEND THEIR COMPLAINT

22.     In *Estate of Lacko*, in which a similar Complaint alleging medical malpractice and

sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky  40202
(502) 582-1600

EMTALA was dismissed for failure to state a claim, the Court refused to allow the Plaintiff to amend its Complaint under Fed. R. Civ. P. 15(a) on the grounds of futility. *Estate of Lacko v. Mercy Hosp.*, 829 F. Supp. 2d at 555. In so holding, the Eastern District of Michigan explained:

> In its response, Plaintiff seeks leave to amend to cure any defects in either the screening or stabilization claim. The current complaint and attached exhibits contain no indication of any improper motive and Plaintiff has already alleged, numerous times, that Defendant failed to determine that Lacko had an emergency medical condition. EMTALA was enacted to prevent hospital emergency rooms from dumping patients that could not afford treatment. It was not intended to provide a suit for medical negligence or substitute for a medical malpractice claim. Here, Plaintiff sets forth a potential medical malpractice claim, but the allegations do not describe a case that EMTALA was intended to cover. Therefore, this Court finds that granting Plaintiff leave to amend would be futile.

*Id.* As there, so here.

DATE: March 3, 2015                                     Respectfully submitted

                                                        **Sheffer Law Firm, PLLC**,


                                                        */s/ Ronald G. Sheffer*
                                                        Ronald G. Sheffer
                                                        Phillip Monhollen
                                                        101 S. Fifth Street, Ste. 1450
                                                        Louisville, KY 40202
                                                        Email: rsheffer@kylaw.com
                                                        Email: pmonhollen@kylaw.com
                                                        Tel: (502) 582-1600
                                                        *Counsel for Defendant, Owensboro Health, Inc., f/k/a Owensboro Medical Health System, Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that on March 3, 2015, I electronically filed the foregoing with the clerk of the court by using CM/ECF system, which will send a notice of electronic filing to the following:

Travis L. Holtrey
Hollie B. Lindsey
Arthur F. Cook
Foreman Watson Holtrey, LLP
530 Frederica Street
Owensboro, KY 42301
tholtrey@fwhlegal.com
hlindsey@fwhlegal.com
acook@fwhlegal.com
*Counsel for Plaintiff*

                                                  */s/ Ronald G. Sheffer*
                                                  *Counsel for Defendant, Owensboro Health, Inc., f/k/a Owensboro Medical Health System, Inc.*

sheffer·law·firm
101 South Fifth Street, Suite 1450
Louisville, Kentucky 40202
(502) 582-1600