UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:14-CV-00046-JHM

KEVIN LEE PERRY, Individually, and
as Administrator of the Estate of
MADONNA G. PERRY, Deceased,
N.P., minor, by his father and next friend
Kevin Perry, and ANDREA SMITH BUTLER                            PLAINTIFFS

V.

OWENSBORO HEALTH, INC.,
formerly known as OWENSBORO
MEDICAL HEALTH SYSTEM, INC.                                      DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings [DN 30] pursuant to Federal Rule of Civil Procedure 12(c) and 12(h)(2)(B). Fully briefed, this matter is ripe for decision. For the following reasons, the Motion for Judgment on the Pleadings is **GRANTED**.

### I. STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion for judgment on the pleadings "is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (citing Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511–12 (6th Cir. 2001)); Fed. R. Civ. P. 12(b)(6); Fed. R. Civ. P. 12(c). Upon a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin American Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007), "accept all well-pled factual allegations as true," id., and determine whether the

"complaint states a plausible claim for relief," Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for his or her entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard only when he or she "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts "'merely consistent with' a defendant's liability," id. at 678 (quoting Twombly, 550 U.S. at 557), or if the alleged facts do not "permit the court to infer more than the mere possibility of misconduct," id. at 679. Instead, the allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## II. BACKGROUND

As required by Rule 12(b)(6)'s analytical framework, the Court treats as true the following non-conclusory factual allegations stated in Plaintiffs' Third Amended Complaint.

Madonna G. Perry ("Perry") was treated through the emergency room at Owensboro Health ("OHI"), on two separate occasions on November 6, 2009. (3d Am. Compl. [DN 6-4] ¶ 8.) During both admissions to the OHI emergency room, Perry "complained of a non-healing surgical wound, fever, nausea, vomiting[,] and diarrhea. She was found to be hypertensive and had an escalated white blood cell count." (Id. ¶ 12[1].[1]) On both visits, Perry received medical care and treatment from OHI physicians and other medical personnel. (Id. ¶¶ 8–11.) Perry was discharged home from both emergency room admissions at OHI, "despite her rapidly deteriorating condition." (Id. ¶ 12[2].) After her second discharge, Perry "returned to her home

---

[1] There are two consecutive paragraphs numbered "12" in Plaintiffs' Third Amended Complaint [DN 6-4]. For clarity, the Court cites those paragraphs as "12[1]" and "12[2]," with the bracketed numeral indicating the order in which the paragraph appears in the amended complaint.

2

in pain and went to bed suffering through the night and into the next morning." (Id. ¶ 14.) On November 7, 2009, Perry "awoke in pain, took her medicine[,] and went back to bed. Several hours later [she] was found dead in her bed." (Id. ¶ 15.)

Plaintiffs, who are surviving family members of Perry, filed suit against OHI and other defendants pursuant to state tort law, asserting negligence claims and claims for loss of consortium, in Daviess County Circuit Court. (See Original Compl. [DN 6-6].) On April 2, 2014, Plaintiffs filed in state court their Third Amended Complaint, which, *inter alia*,[2] added a claim against OHI pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, for OHI's alleged failure to appropriately screen, diagnose, stabilize, treat, and transfer Perry adequately, causing or contributing to her death. (See 3d Am. Compl. [DN 6-4].) Defendant then removed the action from Daviess County Circuit Court to this Court on April 28, 2014, based on federal question jurisdiction. (See Removal Notice [DN 1].)[3]

Defendant filed this motion for judgment on the pleadings under Rule 12(c) and (h)(2)(B), arguing that the Court should dismiss Plaintiffs' EMTALA claims because the facts alleged in the Third Amended Complaint fail to state a claim under EMTALA upon which relief can be granted and that the Court should decline to exercise supplemental jurisdiction over the state-law claims. (Def.'s Mot. J. Pleadings [DN 30].) Plaintiffs opposed the motion and

---

[2] The Third Amended Complaint also removed all defendants other than OHI from the action. (See 3d Am. Compl. [DN 6-4] 1 ("This amended complaint does not include allegations against prior defendants . . . as such matters have been settled.").)

[3] Defendant previously filed a motion to dismiss for failure to state a claim alleging that Plaintiffs' EMTALA claim was barred by the applicable statute of limitations [DN 10]. The Court denied the motion by Order dated August 12, 2014, finding the EMTALA claim related back pursuant to FRCP 15(c)(1)(B). (Order Den. Def.'s Mot. Dismiss [DN 15] 1.) The Court then denied Defendant's motion for reconsideration of that Order, by Order dated September 24, 2014 [DN 19], on the ground that the arguments raised in Defendant's motion to reconsider either were previously advanced by Defendant or could have been advanced by Defendant. (Order Den. Def.'s Mot. Recons. [DN 19] 2.) The Court noted that Defendant's futility argument was not properly before it because the amended complaint had already been allowed by the state court. The Court concluded by stating that "[i]t remain[ed] to be seen whether such a claim is legally viable." (Id.)

submitted numerous exhibits in support of their opposition, yet consistently stated Rule 12(b)(6) was the applicable standard of review. (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33].) Defendant replied in opposition [DN 34] asserting that the pleadings were sufficient to resolve this controversy and asking the Court to exclude information beyond the pleadings and examine whether Plaintiffs state a plausible claim for relief under EMTALA based solely on the pleadings. See Fed. R. Civ. P. 12(d). Defendant alternatively argued—in the event that the Court opted to consider matters outside the pleadings and therefore convert Defendant's motion into one for summary judgment pursuant to Rule 12(d)—that it is entitled to summary judgment on Plaintiffs' EMTALA claims and attached evidence in support of that argument. (Def.'s Reply [DN 34].) As it believes the pleadings are sufficient to resolve this controversy, the Court, in its discretion, excludes the matters outside the pleadings that were presented by the parties.[4]

### III. DISCUSSION

Plaintiffs assert that Defendant violated the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd. Congress enacted EMTALA in 1986 "in response to a growing concern that hospitals were 'dumping' patients unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their emergency medical conditions were stabilized." Brooks v. Md. Gen. Hosp., Inc., 996 F.2d 708, 710 (4th Cir. 1993); Cleland v. Bronson Health Care Grp., Inc., 917 F.2d 266, 268 (6th Cir. 1990). Pre-

---

[4] Plaintiffs attached various medical records and depositions of medical personnel to their response brief. In resolving motions to dismiss, a court may consider the well-pled factual allegations in the complaint, exhibits attached to or incorporated by reference into the complaint, matters of public record, and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). The exhibits attached by Plaintiffs do not fit into any of these categories. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented" to the court, under Rule 12(d) the court has discretion to decide whether to *exclude* such information and examine whether the plaintiff states plausible claims for relief based solely on the pleadings, or to *convert* the motion to dismiss to a motion for summary judgment under Rule 56 and examine appropriate extrinsic materials submitted by the parties. See Fed. R. Civ. P. 12(d); Friends of Tims Ford v. Tenn. Valley Auth., 585 F.3d 955, 965 (6th Cir. 2009) (citing Ball v. Union Carbide Corp., 385 F.3d 713, 719 (6th Cir. 2004)). Here, the Court declines to consider the documents attached to Plaintiffs' Response.

EMTALA, these "dumped" patients were left without a remedy, as traditional state tort law does not provide a remedy for failure to treat. See Brooks, 996 F.2d at 710; Gatewood v. Wash. Healthcare Corp., 933 F.2d 1037, 1041 (D.C. Cir. 1991) ("[EMTALA] is not intended to duplicate preexisting legal protections, but rather to create a new cause of action, generally unavailable under state tort law, for what amounts to failure to treat."); Thorton v. Sw. Detroit Hosp., 895 F.2d 1131, 1133 (6th Cir. 1990). "EMTALA was not intended to establish guidelines for patient care, to replace available state remedies, or to provide a federal remedy for medical negligence." Harry v. Marchant, 291 F.3d 767, 773 (11th Cir. 2002); see, e.g., Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 142 (4th Cir. 1996) (quoting Power v. Arlington Hosp. Ass'n, 42 F.3d 851, 856 (4th Cir. 1994)) ("EMTALA is not a substitute for state law malpractice actions, and was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence."); Gatewood, 933 F.2d at 1039 ("[T]he Emergency Act does not create a broad federal cause of action for emergency room negligence or malpractice."); Cleland, 917 F.2d at 268, 272; Hines v. Adair Cnty. Pub. Hosp. Dist. Corp., 827 F. Supp. 426, 431–32 (W.D. Ky. 1993) ("In other words, Congress did not intend to create a federal tort of negligence or to require the application of a negligence standard in an analysis of either of these federal duties as an alternative to state medical malpractice claims.").

To accomplish its goal of ensuring that all patients seeking necessary emergency medical care receive it, irrespective of their ability to pay, EMTALA imposes two requirements on hospitals that both participate in Medicare and maintain an "emergency department." First, to provide any individual presented for treatment with "an appropriate medical screening . . . to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a) (the "screening" requirement). Second, and only if "the hospital determines that the individual

5

has an emergency medical condition, the hospital must provide either . . . for such further medical examination and such treatment as may be required to stabilize the medical condition, or for transfer of the individual to another medical facility." 42 U.S.C. § 1395dd(b)(1) (the "stabilization" requirement).

The parties do not contest that OHI is a participating hospital with an emergency department and that Perry arrived at the OHI emergency room seeking medical treatment. At issue is whether the well-pled factual allegations in Plaintiffs' Third Amended Complaint state plausible claims for relief pursuant to EMTALA's screening and stabilization provisions. Plaintiffs contend that the facts as pled in their Third Amended Complaint show Defendant failed to provide an appropriate medical screening examination and failed to stabilize Perry despite her rapidly deteriorating condition. (See Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 6.) For the reasons explained below, the Court finds that Plaintiffs' Third Amended Complaint fails to allege necessary elements of both a screening claim and a stabilization claim under EMTALA. The complaint therefore fails to state a claim upon which relief can be granted under EMTALA, and Defendant's Motion for Judgment on the Pleadings is granted.

### A. *Appropriate Medical Screening Requirement, 42 U.S.C. § 1395dd(a)*

When an individual comes to participating hospital's emergency department seeking treatment, EMTALA's screening provision requires the hospital "provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition . . . exists." 42 U.S.C. § 1395dd(a). EMTALA does not define what constitutes an "appropriate medical screening examination"; however, the

6

Sixth Circuit interpreted the "ambiguous" phrase in Cleland v. Bronson Health Care Group, Inc., 917 F.2d 266 (6th Cir. 1990). In the court's view,

> the terms of the statute, specifically referring to a medical screening exam by a hospital "within its capabilities" precludes resort to a malpractice or other objective standard of care as the meaning of the term "appropriate." Instead, "appropriate" must more correctly be interpreted to refer to the motives with which the hospital acts. If it acts in the same manner as it would have for the usual paying patient, then the screening provided is "appropriate" within the meaning of the statute.

Cleland, 917 F.2d at 272. Thus, the Cleland court ruled that an "appropriate medical screening" under § 1395dd(a) "mean[s] a screening that the hospital would have offered to any paying patient." 917 F.2d at 268. "The screening provision, 'at the core,' thus 'aims at disparate treatment.'" Vickers, 78 F.3d at 143 (quoting Brooks, 996 F.2d at 713). Accordingly, "EMTALA is implicated only when individuals who are perceived to have the same medical condition receive disparate treatment" with respect to their screening. Vickers, 78 F.3d at 144. Additionally, in the Sixth Circuit, a plaintiff asserting a § 1395dd(a) claim must demonstrate an improper motive on the part of the defendant. Cleland, 917 F.2d at 272. "Thus, for an EMTALA plaintiff in the Sixth Circuit to show that she did not receive an appropriate screening, she must adduce some evidence that her screening differed in some way from that given to other patients, and the difference was improperly motivated." Romine v. St. Joseph Health Sys., 541 F. App'x 614, 620 (6th Cir. 2013).

In the present case, Plaintiffs allege, in their Third Amended Complaint, that Defendant violated § 1395dd(a) by "failing to provide sufficient examination, testing[,] and/or diagnostic evaluation which would have demonstrated Madonna's emergency medical condition." (3d Am. Compl. [DN 6-4] ¶ 25(F).)[5] Defendant argues that Plaintiffs have failed to state a claim under §

---

[5] Plaintiffs also allege that Defendant violated § 1395dd(a) by "fail[ing] to perform an appropriate medical screening of Madonna." (3d Am. Compl. [DN 6-4] ¶ 25(B).) This allegation, which provides no more than a mere

7

1395dd(a) because they have not alleged that Perry's screenings differed in some way from the screenings given to other patients and because they have not alleged that any "failure to perform an appropriate medical screening" was due to an improper motive, as required by Cleland. The Court agrees with this conclusion and finds that the Third Amended Complaint's factual allegations assert merely negligent care rather than disparate treatment of Perry attributable to an improper motive.

Plaintiffs argue that Defendant is liable under EMTALA because Perry's symptoms "should have triggered an investigation into a more thorough evaluation and screening to determine her emergency condition." (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 9.) Essentially, Plaintiffs are contending that OHI committed negligence in failing to accurately diagnose an emergency medical condition. In Cleland, the Sixth Circuit rejected the plaintiffs' contention "that 'appropriate' denotes, at a minimum, the full panoply of state malpractice law, and at a maximum, includes a guarantee of successful result." 917 F.2d at 271; see also Baber v. Hosp. Corp. of Am., 977 F.2d 872, 879 (4th Cir. 1992) ("Thus, while EMTALA requires a hospital emergency department to apply its standard screening examination uniformly, it does not guarantee that the emergency personnel will correctly diagnose a patient's condition as a result of this screening."); Gatewood, 933 F.2d at 1041 (rejecting plaintiff's contention that hospital violates § 1395dd(a) "whenever it negligently misdiagnoses a patient's condition," and finding EMTALA "is intended not to ensure each emergency room patient a correct diagnosis, but rather to ensure that each is accorded the same level of treatment regularly provided to

---

recitation of the statute devoid of factual enhancement, is insufficient to state a claim. As this Court noted above, "a formulaic recitation of the elements of a cause of action will not do" and bald assertions and conclusions of law will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); Smith v. Bank of Am. Corp., 485 F. App'x 749, 755 (6th Cir. 2012).

patients in similar medical circumstances"). Although Plaintiffs may well be correct that further diagnostic testing was advisable, that is a matter reserved for state tort law. Plaintiffs' failure to allege that the medical screenings that Perry *did receive* were "in any way different than would have been offered to any other patient," Cleland, 917 F.2d at 269, is fatal to their claim that OHI failed to provide an appropriate medical screening. See id.; Gatewood, 933 F.2d at 1041 ("Absent some allegation of differential treatment, no claim is stated under subsection 1395dd(a)."); Taylor v. Jewish Hosp. & St. Mary's Healthcare, Inc., 26 F. Supp. 3d 642, 651 (W.D. Ky. 2014) (granting summary judgment where plaintiff failed to present evidence of disparate treatment); Broughton v. St. John Health Sys., 246 F. Supp. 2d 764, 769 (E.D. Mich. 2003) (dismissing plaintiff's § 1395dd(a) claim under Rule 12(b)(6) where plaintiff had not alleged disparate treatment).

Additionally, Plaintiffs have not alleged that "that this outcome would have been any different for a patient of any other characteristics." Cleland, 917 F.2d at 271. In other words, Plaintiffs have not alleged that OHI's failure to provide sufficient diagnostic evaluation, which would have demonstrated Perry's emergency medical condition, was due to Perry's sex, race, national origin, financial condition, political affiliation, social status, or any other impermissible motive. Id. Accordingly, "the complaint simply fails to allege any inappropriateness in the medical screening in the sense required by the Act." Id.; see Estate of Lacko, ex rel. Griswatch v. Mercy Hosp., Cadillac, 829 F. Supp. 2d 543, 551 (E.D. Mich. 2011) (granting defendant's motion to dismiss where plaintiff "simply failed to allege that Defendant had any improper motive"); Broughton, 246 F. Supp. 2d at 769 (dismissing plaintiff's § 1395dd(a) claim for failure to state a claim upon which relief may be granted under Cleland where plaintiff had not alleged improper motive). Plaintiffs argue that, regarding improper motive, "there is a possibility the

9

hospital's deficient treatment of Madonna occurred as a result of overcrowding or by returning to the hospital shortly after being discharged the first time." (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 9.)  This speculative argument is insufficient.  Plaintiffs have not alleged any facts regarding improper motive.  Moreover, the plausibility standard of a Rule 12(b)(6) motion "asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

Plaintiffs' arguments in opposition are unpersuasive.  Plaintiffs argue that the Supreme Court's decision in Roberts v. Galen of Virginia, Inc., 525 U.S. 249 (1999), "suggest[ed] the 'appropriate' analysis engaged in under Cleland is suspect."  (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 7–8.)  However, the Supreme Court in Roberts was addressing the "stabilization" provision of § 1395dd(b), not the screening provision of § 1395dd(a).  Roberts, 525 U.S. at 252.  In Roberts, the Supreme Court ruled that, in order to recover under § 1395dd(b)(1)(A), a plaintiff is not required to allege that the hospital's failure to stabilize the patient was due to an improper motive.  Id. at 252–53 (noting that "[u]nlike the provision of EMTALA at issue in Cleland, § 1395dd(a), the provision at issue in this case, § 1395dd(b), contains no requirement of appropriateness").  While a footnote in that case does indicate that the Sixth Circuit's § 1395dd(a) requirement of "improper motive" is in the minority, id. at 253 n.1, the Court also stated that the "the correctness of the Cleland court's reading of § 1395dd(a)'s 'appropriate medical screening' requirement is not before us, and we express no opinion on it here," id. at 253.  Therefore, Cleland is still the governing case law in this Circuit and a plaintiff must allege "improper motive" in order to state a claim under § 1395dd(a).  See Romine, 541 F. App'x at 620–21 (declining to "revisit" the Cleland decision); Burd ex rel. Burd v. Lebanon HMA, Inc., 756 F. Supp. 2d 896, 902–03 (M.D. Tenn. 2010); Broughton, 246 F. Supp. 2d at 771; Newsome v. Mann, 105 F. Supp. 2d 610, 611 & n.1 (E.D. Ky. 2000).

10

Plaintiffs also argue that, regardless of whether Cleland's interpretation of § 1395dd(a) is correct, "the two-step inquiry for the screening requirement is only what Plaintiffs are required to prove to the factfinder, not what is required in the pleadings to allege such a violation, which is the issue here." (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 8 (contending that Defendant "confuse[s] 'burden of proof' in establishing Plaintiffs' case with 'plausibility in pleading' a cause of action").) The Court rejects this argument as well. Cleland involved a motion to dismiss under Rule 12(b)(6) and the Sixth Circuit's dismissal in that case was based upon failure to state a claim under Rule 12(b)(6), not based on a failure of proof under Rule 56. See Cleland, 917 F.2d at 271; see also Estate of Lacko, 829 F. Supp. 2d at 551; Broughton, 246 F. Supp. 2d at 769–71.

Thus, the Court finds that Plaintiffs have failed to allege the elements of disparate treatment and improper motive, which are necessary to state a claim of inappropriate screening under EMTALA, 42 U.S.C. § 1395dd(a). Accordingly, the Court dismisses Plaintiffs' § 1395dd(a) claim for failure to state a claim upon which relief may be granted.

**B.   *Stabilization Requirement, 42 U.S.C. § 1395dd(b)***

Pursuant to EMTALA's stabilization provision, if "the hospital determines that the individual has an emergency medical condition, the hospital must provide either--(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section." 42 U.S.C. § 1395dd(b)(1). EMTALA defines "emergency medical condition" as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (i)

placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A). "To stabilize" a patient with such an "emergency medical condition" means "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." 42 U.S.C. § 1395dd(e)(3)(A). "Transfer" is defined in the statute to include moving the patient to an outside facility or discharging her. 42 U.S.C. § 1395dd(e)(4).

Importantly, in order to proceed under EMTALA's stabilization provision, a plaintiff first must show that "the hospital determine[d] that the individual ha[d] an emergency medical condition." 42 U.S.C. § 1395dd(b)(1). Thus, "a hospital's duty to stabilize is not triggered absent actual knowledge of an emergency medical condition." Taylor, 26 F. Supp. 3d at 650 (citation omitted); Moses v. Providence Hosp. & Med. Ctrs., Inc., 561 F.3d 573, 585 (6th Cir. 2009) (citing Roberts ex rel. Johnson v. Galen of Virginia, Inc., 325 F.3d 776, 786 (6th Cir. 2003)) ("[I]n order to trigger further EMTALA obligations, the hospital physicians must actually recognize that the patient has an emergency medical condition; if they do not believe an emergency medical condition exists because they wrongly diagnose the patient, EMTALA does not apply."); Cleland, 917 F.2d at 271 (footnote omitted) ("If the emergency nature of the condition is not detected, the hospital cannot be charged with failure to stabilize a known emergency condition."); Urban ex rel. Urban v. King, 43 F.3d 523, 526 (10th Cir. 1994) ("The statute's stabilization and transfer requirements do not apply until the hospital determines the individual has an emergency medical condition."). Therefore, in order for OHI to even have

12

additional duties under EMTALA, such as being required to stabilize Perry before discharging her, OHI must have had actual knowledge that Perry had an emergency medical condition.

In the present case, Plaintiffs allege, in their Third Amended Complaint, that Defendant violated § 1395dd(b) by "fail[ing] to provide appropriate medical treatment required by Madonna," (3d Am. Compl. [DN 6-4] ¶ 25(C)), "fail[ing] to provide an appropriate transfer of Madonna," (id. ¶ 25(D)), and "discharging Madonna while she manifested a condition of sufficient severity such that Owensboro Health's refusal of immediate medical attention and continued treatment was reasonably expected, by any skilled healthcare provider, to result in severe jeopardy and death," (id. ¶ 25(E)). Defendant argues that Plaintiffs have failed to state a claim under § 1395dd(b) because they have not alleged that OHI had actual knowledge of an emergency medical condition. The Court agrees with Defendant and finds that Plaintiffs have failed to state a claim under § 1395dd(b) upon which relief can be granted.

The Third Amended Complaint falls short of alleging that Defendant knew Perry had an emergency medical condition. The complaint states: (1) Perry complained to OHI of a non-healing surgical wound, fever, nausea, vomiting, and diarrhea, (2) Perry was found to be hypertensive and had an elevated white blood cell count, and (3) Perry was discharged "despite her rapidly deteriorating condition" and returned to her home in pain. (3d Am. Compl. [DN 6-4] ¶¶ 12[1], 12[2], 14.) Additionally, the complaint implies that OHI did not have actual knowledge that Perry had an emergency medical condition:

> [OHI violated EMTALA by] [f]ailing to provide sufficient examination, testing[,] and/or diagnostic evaluation *which would have demonstrated Madonna's emergency medical condition*.

(3d Am. Compl. [DN 6-4] ¶ 25(F) (emphasis added).)

Plaintiffs contend that they did plead "the hospital had actual knowledge of the emergent condition," arguing that they "specifically pled Madonna was *found* to be hypertensive and *found*

13

to have an escalated white blood cell count. This is a pleading of *actual knowledge*." (Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 11.) In making this argument, Plaintiffs misunderstand the actual knowledge element required to trigger obligations under § 1395dd(b). Accepting the well-pled factual allegations in the Third Amended Complaint as true, Defendant knew that Perry was hypertensive and had an elevated white blood cell count. However, the hospital staff members must have actual knowledge that an *emergency medical condition* exists for EMTALA's stabilization provision to apply. Moses, 561 F.3d at 585. "[O]nly actual knowledge of an emergency medical condition on the part of [OHI]'s staff—not simply the existence of facts that should have put Defendant on notice—triggers a duty to stabilize a patient pursuant to § 1395dd(b) of EMTALA." Burd ex rel. Burd v. Lebanon HMA, Inc., 756 F. Supp. 2d 896, 906 (M.D. Tenn. 2010). EMTALA "does not hold hospitals accountable for failing to stabilize conditions of which they are not aware, or even conditions of which they should have been aware. [Baber, 977 F.2d at 883.] EMTALA would otherwise become coextensive with malpractice claims for negligent treatment." Vickers, 78 F.3d at 145. "[A]ny hospital employee or agent that has knowledge of a patient's emergency medical condition might potentially subject the hospital to liability under EMTALA." Moses, 561 F.3d at 585 (quoting Roberts, 325 F.3d at 788). However, to the extent that Plaintiffs argue that OHI was negligent in failing to recognize that Perry had an emergency medical condition, such an allegation does not fall under EMTALA and is reserved for state tort law. Id. at 585 n.1. Because Plaintiffs have not pled that OHI had actual knowledge that Perry had an emergency medical condition, the stabilization requirement of § 1395dd(b) does not apply.

Even if Plaintiffs had pled that OHI had actual knowledge of an emergency medical condition sufficient to trigger duties under § 1395dd(b), they have not pled facts in the Third

14

Amended Complaint regarding other material elements of a stabilization claim under § 1395dd(b). First, it is unclear from the Third Amended Complaint what Plaintiffs allege was Perry's emergency medical condition. Second, Plaintiffs have not pled that OHI had actual knowledge that Perry had an unstable emergency medical condition when discharged. While "a discharge that to the knowledge of those conducting it left a patient with an 'emergency medical condition' in an 'unstable' condition would be actionable," Cleland, 917 F.2d at 272, under § 1395dd(b), "[a] plain reading of the statute reveals actual knowledge of an unstabilized emergency medical condition as a requirement to establish liability," Urban, 43 F.3d at 525. The Cleland court dismissed the plaintiff's complaint for failure to state a claim in part because there were no factual allegations that the doctors knew at the time of discharge the patient had an unstabilized emergency medical condition. 917 F.2d at 269. Similarly, here, Plaintiffs have not pled factual allegations that OHI *knew* it was discharging Perry while she had an unstable emergency medical condition. Contrary to Plaintiffs' contention, simply alleging that Perry's condition was rapidly deteriorating when discharged is not sufficient to state a claim under the stabilization requirement of EMTALA, unless it is also alleged that OHI knew that it was. See 42 U.S.C. § 1395dd(b); Cleland, 917 F.2d at 269, 272. Plaintiffs' argument relates to the condition that, in hindsight, Perry turned out to have been in. "'Analysis by hindsight,' however, 'is not sufficient to impose liability under EMTALA.' Baber, 977 F.2d at 883. Instead, a hospital must actually perceive the seriousness of the medical condition and nevertheless fail to act to stabilize it." Vickers, 78 F.3d at 145.

Assuming all the well-pled factual allegations in the Third Amended Complaint are true, the Court finds Plaintiffs have failed to allege the element of actual knowledge of an emergency medical condition, which is necessary to trigger further EMTALA obligations under §

1395dd(b), and have failed to allege the necessary elements of a stabilization claim under EMTALA, 42 U.S.C. § 1395dd(b). Accordingly, the Court dismisses Plaintiffs' § 1395dd(b) claim for failure to state a claim upon which relief can be granted.

### C. *Leave to Amend*

In their response to Defendant's motion for judgment on the pleadings, Plaintiffs request they be permitted to amend the complaint in the event that the Court found it to be deficient. As this would be the fourth time that Plaintiffs would be amending their complaint, Federal Rule of Civil Procedure 15(a)(2) governs. Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A district court should freely grant leave "when justice so requires." Id. Granting leave freely "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings." Tefft v. Seward, 689 F.2d 637, 639 (6th Cir. 1982). However, a district court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, Plaintiffs never filed a motion to amend or submitted proposed new allegations, despite being on clear notice that the sufficiency of their pleadings was being challenged by the filing of Defendant's Rule 12(c) motion. See Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 551–52 (6th Cir. 2008) (finding that district court did not err in denying amendment where plaintiff did not proffer a motion or proposed amendments; district court "was not required to engage in a guessing game" as to what plaintiff might plead to save her claim). Instead, in their response to Defendant's motion for judgment on the pleadings, Plaintiffs requested leave to

amend in a single sentence. "Although FRCP 15 instructs courts to 'freely give leave' to amend, that liberal policy does not apply to the plaintiffs' one-sentence request." Kuyat v. BioMimetic Therapeutics, Inc., 747 F.3d 435, 444 (6th Cir. 2014). "A 'request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" Id. (quoting La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010)); see Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 784 (6th Cir. 2000). Plaintiffs' response to Defendant's motion for judgments on the pleadings contained "precisely that kind of throwaway language," Kuyat, 747 F.3d at 444, in its one-sentence request. (See Pls.' Resp. to Def.'s Mot. J. Pleadings [DN 33] 15 ("However, if the Court decides Plaintiffs have failed to plead the elements of EMTALA appropriately, they respectfully request leave to amend their complaint.").) Furthermore, Plaintiffs did not submit a proposed amendment in support of their request. "Normally, a party seeking an amendment should attach a copy of the amended complaint." Kuyat, 747 F.3d at 444 (citation omitted).

However, a plaintiff's failure to attach a proposed amendment is not necessarily fatal. But a court cannot evaluate the propriety of granting leave unless the court has before it the substance of the proposed amendment. See Roskam Baking Co. v. Lanham Mach. Co., 288 F.3d 895, 906 (6th Cir. 2002). Although Plaintiffs did not submit a proposed amendment, they did include in opposition to the present motion additional facts not included in the pleadings that they argue support a claim under EMTALA. Taking these facts as the substance of Plaintiffs' would-be amendment, the Court finds that they, in conjunction with the facts pled in the Third Amended Complaint, are inadequate. The current complaint and the exhibits Plaintiffs attached to their response brief contain no indication of any disparate treatment or improper motive within the meaning of EMTALA. Further, the unalleged facts argued by Plaintiffs in support of a

stabilization claim are at their core misdiagnosis allegations, similar to the facts in Cleland, 917 F.2d 266, and Vickers, 78 F.3d 139.[6] "EMTALA was enacted to prevent hospital emergency rooms from dumping patients that could not afford treatment. It was not intended to provide a suit for medical negligence or substitute for a medical malpractice claim." Estate of Lacko, 829 F. Supp. 2d at 555. Here, Plaintiffs set forth a potential medical negligence claim, but the allegations do not support a case that EMTALA was intended to cover. Consequently, granting further leave to amend would be futile. See id.; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."); Thorsen v. Sons of Norway, 996 F. Supp. 2d 143, 167 (E.D.N.Y. 2014), reconsideration denied (May 14, 2014).

### D. *State-Law Claims*

Defendant argues that the negligence claim and corresponding loss of consortium claims should be dismissed for lack of subject matter jurisdiction if this Court dismisses the EMTALA claims. Section 1367(c) of Title 28 of the United States Code permits a district court to decline to exercise supplemental jurisdiction over a claim if it raises a novel or complex issue of state law; it substantially predominates over the claims over which the court had original jurisdiction; the court has dismissed all claims over which it had original jurisdiction; or in exceptional

---

[6] Not infrequently, plaintiffs attempt to bring claims under EMTALA that are in reality claims for misdiagnosis. For example, a patient comes to a hospital's emergency room complaining of cramps and vomiting. The hospital diagnoses the patient with influenza, treats that condition, and discharges the patient. Unfortunately, that diagnosis was incorrect and the patient was actually suffering from intussusception, where a part of the intestine telescopes within itself. Less than 24 hours later, the patient suffers cardiac arrest and dies. (These were the facts of Cleland v. Bronson Health Care, 917 F.2d 266, 268 (6th Cir. 1990).) While these facts may give rise to a negligence or malpractice claim, they do not give rise to an EMTALA claim.

In these cases, the plaintiff's claim that the hospital failed to stabilize the patient's condition is in error, "at least as regards the condition of which the Hospital was actually aware." Vickers v. Nash Gen. Hosp., Inc., 78 F.3d 139, 145 (4th Cir. 1996). The plaintiff's claim instead relates to the condition that, in hindsight, the patient turned out to have—intussusception, in our example—and alleges that the hospital failed to take adequate steps to stabilize that condition. "'Analysis by hindsight,' however, 'is not sufficient to impose liability under EMTALA.' Baber[ v. Hosp. Corp. of Am., 977 F.2d 872,] 883 [(4th Cir. 1992)]. Instead, a hospital must actually perceive the seriousness of the medical condition and nevertheless fail to act to stabilize it." Vickers, 78 F.3d at 145.

circumstances in which there are other compelling reasons to decline jurisdiction. 28 U.S.C. § 1367(c); see also United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). In Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988), the Supreme Court discussed the propriety of exercising supplemental jurisdiction over pendent state-law claims following its decision in United Mine Workers v. Gibbs, 383 U.S. 715 (1966).

> The Gibbs Court recognized that a federal court's determination of state-law claims could conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. For this reason, Gibbs emphasized that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." [Id.] Under Gibbs, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice. [Gibbs, at 726–27.]

Carnegie-Mellon, 484 U.S. at 349–50 (footnote omitted).

Given that the Court has dismissed the only claim over which it had original jurisdiction, the remaining claims are state-law claims, and that all discovery in this matter has taken place in Daviess County Circuit Court, the Court finds that the balance of judicial economy, convenience, fairness, and comity all point toward declining supplemental jurisdiction. Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state-law tort claims. Accordingly, the Court dismisses without prejudice Plaintiffs' state-law claims.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion for Judgment on the Pleadings [DN 30] is **GRANTED**. It is further ordered that the remaining state-law claims are **DISMISSED without prejudice**.

                                                      **Joseph H. McKinley, Jr., Chief Judge**
                                                          **United States District Court**

cc: Counsel of Record

July 16, 2015